548 P.2d 844

**MARICOPA COUNTY NEIGHBORHOOD YOUTH CORPS and State Compensation Fund, Petitioners,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**James R. Hunter, Respondent Employee.**

**No. I CA–IC 1369.**

Court of Appeals of Arizona,
Division 1,
Department C.

April 20, 1976.

Rehearing Denied May 21, 1976.
Review Denied June 29, 1976.

Robert K. Park, Chief Counsel, State Compensation Fund, by J. Victor Stoffa, Phoenix, for petitioners.

Greg L. Folger, Chief Counsel, Phoenix, for respondent The Industrial Commission of Arizona.

Machmer, Schlosser & Meitz, Ltd., by Ronald M. Meitz, Phoenix, for respondent employee.

## OPINION

HAIRE, Chief Judge, Division 1.

On this review of an award entered by the Industrial Commission in a workmen's compensation proceeding, the issue presented is one of first impression for this jurisdiction, namely, when applying A.R.S. § 23-1042 to a situation involving a minor who has sustained a permanently incapacitating injury, should the minor's average monthly earning capacity be determined by looking forward to what the minor himself would have been able to earn *upon his actual attainment of age 21*, or should it be determined based upon the earnings *at the time of the injury* of a 21 year old in the minor's occupation.[1]

While there is difference of opinion between the parties as to the proper interpretation of the statute, the underlying facts are not in dispute. On April 19, 1971, James Hunter, then 14 years old, sustained a fracture of his left femur when he fell on a waxed floor while working for the petitioner-employer. A claim for benefits was timely filed. Eventually, the parties agreed to have the average monthly earning capacity determination made by the Commission's hearing officer based upon a factual foundation stipulated by the parties. The parties stipulated that the claimant's injury caused permanent injury impairment and also that the reports of an expert witness, economist Edward Heller, were accurate. These reports concluded that if the claimant had been 21 years of age on the date of the injury, his average monthly wage would have been $477.67, while if the determination was made as of the future time when the claimant would have actually attained 21 years of age, the wage would be $654.41.

▮ In setting the claimant's average monthly wage, the hearing officer used the projected wage the claimant would have been expected to earn, absent the injury, when he actually attained the age of 21.

We agree with the standard selected by the hearing officer, and therefore affirm the the Commission's award.

The average monthly wage of an adult, who suffers from either a temporary or permanent injury is determined in accordance with the provisions of A.R.S. § 23-1041B in such amount as:

" . . . having regard to the previous wage [of] the injured employee or of other employees of the same or most similar class working in the same or most similar employment in the same or neighboring locality, reasonably represents the monthly earning capacity of the injured employee in the employment in which he is working at the time of the accident."

However, when the injury involves a minor workman, and the incapacity is permanent, a different method of computation is required by the provisions of A.R.S. § 23-1042:

"If it is established by competent evidence that an injured employee is under twenty-one years of age and his incapacity is permanent, his average monthly earning capacity shall be deemed, within the limits fixed by §§ 23-1041 and 23-1046, to be the monthly amount which under ordinary circumstances he would probably be able to earn at the age of twenty-one years in the occupation in which he was employed at the time of injury, or in any occupation to which he would reasonably have been promoted if he had not been injured. If the probable earnings at the age of twenty-one years cannot be reasonably determined, his average earnings shall be based upon four dollars per day for a six-day week."

▮ In contending that the hearing officer erred, the carrier points to the language in § 23-1042, requiring that the minor's earning capacity be set "within the limits fixed by §§ 23-1041 and 23-1046", and concludes that one of the limits thus

---

I. A 1973 amendment to this statute changed the age to 18 years. However, the accident here involved occurred prior to the enactment of the amendment and therefore the 21 year age is controlling.

referred to is found in the language of § 23–1041A fixing the applicable time for the determination of an adult injured worker's average monthly wage as "at the time of injury". We reject such a contention as being directly contrary to the evident purpose of § 23–1042. Given that normally the focus of the average monthly wage determination in workmen's compensation proceedings is upon the time of the injury, it is apparent that § 23–1042 was intended to project, on an individualized basis, the earning capacity of the permanently incapacitated minor to his probable earning capacity upon his reaching the age of majority. The basic premise behind the statute is that under normal circumstances the minor's wages would be expected to increase as he reaches maturity, and that it would therefore be unjust to base permanent compensation benefits on his average monthly wage at the time of the injury. *Beasley v. Industrial Commission,* 108 Ariz. 391, 499 P.2d 106 (1972).

Looking at the provisions of § 23–1042, it appears that the section itself speaks *"in futuro"*. Support for this view may be found in the provision: "amount which . . . he *would* probably be able to earn at the age of twenty-one years . . ." and, ". . . in any occupation to which he *would* reasonably have been promoted if he had not been injured." (Emphasis added). On the other hand, it is possible that the word "would" is used in the section as an auxiliary function to the word "earn", to express probability or presumption *in present time. See* Webster's Third New International Dictionary. Because of this ambiguity, we do not base our affirmance of the hearing officer's interpretation on the mere use of the word "would" in the statute. We additionally note that the statute's language speaks of the projected wage of the minor in individualized terms, that is, "the monthly amount . . . which *he* would probably be able to earn at the age of twenty-one years", and "in any occupation to which *he* would reasonably have been promoted . . . ." (Emphasis added). It does not speak in terms of the average wage of some other 21 year old worker in the minor's particular occupation at the time of the minor's injury. Admittedly, the section is not a model of clarity, but based upon the use of this individualized language we hold that the fact-finder's search for the injured minor's average monthly earning capacity must focus upon the individual injured minor himself and what he would probably be able to earn when he himself attains age 21. In most economies where some degree of inflation or recession is a given fact, a determination based upon the use of a date other than the time when the injured minor would actually attain age 21 would not truly reflect *his* average monthly earning capacity at that time.[2]

We recognize that the Arizona Supreme Court by its holding in *Beasley, supra,* requires that the projected 21 year old average monthly earning capacity be applied retrospectively to the date of injury, and that it could be logically argued that there is a resulting overpayment of pre-age 21 benefits, which will be further increased by the interpretation which we here affirm. Of course, this Court is bound by the Arizona Supreme Court's decision in *Beasley,* and therefore cannot, even if we were inclined to do so, remedy any inequities created by that decision. In any event, it must be pointed out that inasmuch as § 23–1042 is limited in application to permanent incapacities, consideration cannot be given alone to the pre-age 21 benefits, but must

---

2. The difficulties normally inherent in making this projected earning capacity determination have been circumvented in this case because of the stipulated facts. We recognize that in a descending economy, the interpretation which we adopt would result in a lower average monthly earning capacity determination for the permanently incapacitated injured minor.

also be given to those benefits which would normally accrue in the many post-age 21 years in the life of the average workman.

The award is affirmed.

EUBANK, Judge (dissenting):

I dissent from the opinion on the basis of my previous specially concurring opinion in *Beasley v. Industrial Commission,* 15 Ariz.App. 394, 489 P.2d 57 (1971), which was vacated by our Supreme Court in *Beasley v. Industrial Commission,* 108 Ariz. 391, 499 P.2d 106 (1972). Justice Lockwood, writing for a unanimous court, stated that the computation is *always* based on the employee's average monthly wage "at the time of injury" and ruled that a minor's compensation must be paid retroactively to the date of injury. That date is the base date in determining compensation and, in my opinion, the date of injury should be applied to both adults and minors alike for the reasons stated in *Beasley,* 15 Ariz.App. beginning at 397, and 489 P.2d beginning at 60.